**David C. NIPPES and Janis Nippes T/A Conley Kitchens & Baths, Appellants,**

**v.**

**Frank LUCAS and Joanne Lucas.**

Superior Court of Pennsylvania.

Argued Oct. 9, 2002.

Filed Jan. 10, 2003.

John H. Kiefel, Downingtown, for appellants.

Scott E. Yaw, Malvern, for appellees.

Before HUDOCK, FORD ELLIOTT, and OLSZEWSKI, JJ.

## OPINION BY FORD ELLIOTT, J.:

¶ 1 David C. Nippes and Janis Nippes trading as Conley Kitchens & Bath (hereinafter "CKB") appeal from the order entering judgment following the denial of post-trial motions. Finding no error, we affirm.

¶ 2 CKB entered into a series of construction agreements with Frank Lucas and Joanne Lucas (hereinafter "Lucas").

The agreements were for labor, services, and materials for custom kitchen cabinets, countertops, a kitchen sink, and cabinet hardware to be installed at Lucas' family home in Chester County, Pennsylvania. On February 11, 1998, Lucas' son prepared a list of alleged deficient work performed by CKB. CKB disputed the assertions contained in the list and maintained that it timely completed all labor, services, and materials in a good and workmanlike manner.

¶ 3 Subsequently, CKB filed a civil action and claimed non-payment by Lucas of invoices in the total amount of $6,485.15, arguing breach of contract, *quantum meruit,* and a violation of the Pennsylvania Contractor and Subcontractor Payment Act (hereinafter "Act"), 73 P.S. § 501, *et seq.* On November 8, 2001, during a pre-trial conference before the Honorable Juan R. Sanchez, CKB's pre-trial memorandum was discussed. The memorandum preemptively raised the issue of whether the Act applied to the instant set of facts. Judge Sanchez directed the parties to prepare a joint letter of submission explaining their respective positions concerning the application of the Act. On November 14, 2001, counsel for both parties submitted such a letter.

¶ 4 On November 19, 2001, Judge Sanchez issued an order dismissing, with prejudice, CKB's claim for interest, attorney fees, and costs under the Act. The court held that section 503(a) of the Act precluded such a claim as the construction was performed on Lucas' single-family residence. (*See* trial court order, 11/19/01.) On November 20, 2001, CKB filed a petition asking the trial court to permit immediate appeal of this order. 42 Pa.C.S.A. § 702(b). The court orally denied the petition and on November 20, 2001, a jury rendered a verdict in CKB's favor in the amount of $5,735.15. On November 30,

.2001, CKB filed a motion for post-trial relief on the sole issue of the applicability of the Act. On February 13, 2002, Judge Sanchez issued an order denying post-trial relief.

¶ 5 On appeal, CKB presents two issues for our review:

1. Did the trial court commit an error of law by dismissing [CKB's] claims pursuant [to] the [Act]?

2. May this Honorable Court direct that judgment be entered in favor of [CKB] and against [Lucas] for interest assessed pursuant to 73 P.S. § 505(d), penalty interest assessed pursuant to 73 P.S. § 512(a), and attorney's fees and costs assessed pursuant to 73 P.S. § 512(b)?

CKB's brief at 6.

¶ 6 The matter before this court is one of statutory interpretation and the applicability of the Act to the instant set of facts. CKB claims the trial court erred in finding that the Act does not apply to construction contracts involving a single-family residence. CKB contends the trial court misinterpreted section 503(a) of the Act, which provides as follows:

**§ 503. Application of act.**

(a) Number of residential units. This act shall not apply to improvements to real property which consists of six or fewer residential units which are under construction simultaneously.

73 P.S. § 503(a).[1] Specifically, CKB contends that the trial court's interpretation of this section disregards the word "simultaneously." CKB maintains that the legis-

lature's express use of the word "simultaneously" and the use of the plural word "units" indicate that the Act applies to construction performed on a single residential unit. CKB would urge us to find that the Act applies to *all* construction contracts, as that term is defined by the Act, except those involving two to six residential units simultaneously under construction. (*See* CKB's brief at 14.) We are not persuaded by this argument.

¶ 7 We begin by noting that when determining the meaning of a statute, a court must construe the words of that statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a); *Ludmer v. Nernberg,* 699 A.2d 764, 765 (Pa.Super.1997). When the words of a statute are ambiguous, they are not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Heberling,* 451 Pa.Super. 119, 678 A.2d 794, 795 (1996). It is only when the statute is unclear that the court may embark upon the task of ascertaining the intent of the legislature. *Id.* Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail. *Centolanza v. Lehigh Valley Dairies, Inc.,* 540 Pa. 398, 406, 658 A.2d 336, 340 (1995); *Commonwealth v. Kelley,* 569 Pa. 179, 801 A.2d 551, 555 (2002).

¶ 8 We agree with the trial court that the words of 73 P.S. § 503(a) are clear and free from ambiguity. A plain reading reveals that the Act only applies to construc-

1. If an action is commenced to recover payment due under the Act, and it is determined that an owner, contractor, or subcontractor has failed to comply with the payment terms of the Act, a penalty equal to 1% per month of the amount wrongfully withheld shall be awarded in addition to all other damages due. 73 P.S. § 512(a). The prevailing party in any proceeding to recover any payment under the Act shall also be awarded a reasonable attorney's fee, together with expenses. 73 P.S. § 512(b). Pursuant to section 515 ("Applicability") of the Act, the Act shall apply to construction contracts executed on or after the date of the Act. 73 P.S. § 515.

tion contracts in those instances where seven or more residential units are simultaneously under construction; it was not meant to apply to renovations of a single residence.

¶ 9 In coming to this conclusion, the trial court relied on the well-reasoned case of *Richardson v. Sherman*, 26 D. & C.4th 193 (Pa.Com.Pl.1996), wherein the Honorable R. Stanton Wettick, Jr. was faced with this very issue. In *Richardson*, plaintiff operated a painting and contracting business and was hired to paint the interior of defendants' home. Defendants failed to make payments after the work was completed, and plaintiff instituted a lawsuit to recover the total amount billed. Plaintiff sought to amend his complaint to also recover counsel fees and penalties under the Act. Defendants argued that the Act did not apply to the facts, maintaining the work plaintiff performed, painting, was not within the meaning of the Act and that the Act did not apply to work performed on single-family residences. *Id.* at 194–195.

¶ 10 The court determined that the work plaintiff performed was included under Act, as painting is considered an improvement under section 502. *Id.* at 195. The court, however, found that the Act did not apply to work performed on a single-family residence. Of import to the case at hand, the court looked at the title of section 3, "application of act," and the title to subsection 3(a), "number of residential units." The court acknowledged that headings to sections shall not be controlling, but may be used to aid in the interpretation thereof. *Id.* at 196, n. 3, citing 1 Pa.C.S.A. § 1924, *Fairmount Insurance Company v. Commonwealth of Pennsylvania Insurance Department*, 85 Pa.Cmwlth. 131, 481 A.2d 696, 698, n. 2 (1984); *State Board of*

*Education v. Franklin Township School District*, 209 Pa.Super. 410, 228 A.2d 221, 227 (1967). "[T]he purpose of subsection 3(a) is to base the application of the Act on the number of residential units; it is not to base the application of the Act on whether or not the work involves units which are under construction." *Richardson, supra* at 196.

¶ 11 The *Richardson* court also looked at the purpose of the Act when interpreting the meaning of subsection three.

> The purpose of the Contractor and Subcontractor Payment Act is to provide protection to contractors. Contractors require the greatest protection when they perform work on major construction projects. However, under plaintiff's construction of section 3, this legislation would make a distinction between large jobs (new construction/major renovation of six or fewer residential units) and small jobs (minor repairs to an existing residential unit) for the purpose of providing protection only for the latter work.

*Id.*

¶ 12 We acknowledge the scarcity of case law on this subject matter and note that a published decision of the Allegheny County Court of Common Pleas is not binding precedent. We agree, however, with the rationale set forth in *Richardson* and find that from the plain meaning of the Act, it is clear that the legislature intended this statute to apply to construction contracts in those instances where seven or more residential units are simultaneously under construction. The Act was not meant to apply to construction contracts involving a single-family residence.[2] Thus, as the instant case con-

---

2. CKB refers to section 503(a) as the "Small Builders Exception" and asserts that this section was meant to aid small homebuilders in

competition with larger homebuilders and developers. (Appellant's brief at 16.) However, it stands to reason that the smallest home-

cerned the renovation of one kitchen in one residential home, the trial court properly determined that the Act did not apply.

¶ 13 Based on our disposition of the first issue, we find no need to address CKB's second claim.

¶ 14 Judgment affirmed.

builder of all would be the owner of a single- family residence.